EVA DAY *v.* JOSEPH GABRIELE ET AL.
(AC 26979)

Flynn, C. J., and McLachlan and Lavine, Js.

Argued February 15—officially released May 22, 2007

*Jeremiah Donovan*, for the appellants (defendants).

*Sheila A. Ozalis*, for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. The defendants, Joseph Gabriele and Victoria Gabriele, appeal from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiff, Eva Day. The defendants claim that the court improperly (1) concluded that the evidence supported a finding that their actions constituted a trespass and a nuisance, (2) calculated the amount of compensatory damages awarded to the plaintiff and (3) assessed punitive damages against Victoria Gabriele. We affirm the judgment of the trial court.

From the evidence presented at trial, the court reasonably could have found the following facts. The plaintiff owns and resides at 168 Echo Hill Drive in Stamford. The defendants own and reside at 165 North Lake Drive in Stamford, which is located to the south of the plaintiff's property. The rear portions of the parties' properties are separated by a fifty foot wide strip of land owned by the Aquarion Water Company (Aquarion),[1] known as the Aquarion right-of-way.[2] The Aquarion right-of-way runs in a westerly direction from Long Ridge Road to a reservoir that supplies water to the residents of Stamford and neighboring communities. A dirt road is situated within the right-of-way, and pipes of various types and sizes run under that road, permitting the flow of ground and surface waters.

The plaintiff acquired her property in 1994. In January or February, 2002, the plaintiff observed Joseph Gabriele from her second story kitchen window. He was operating construction equipment and moving dirt around on the Aquarion right-of-way near the southwest

[1] This property previously was owned by the Connecticut American Water Company. Aquarion acquired the assets of the Connecticut American Water Company in April, 2002.

[2] It is undisputed that Aquarion owns the fee interest in the fifty foot wide strip of land. The parties and the witnesses, however, referred to it as the Aquarion right-of-way.

corner of her property. She saw him exit the construction vehicle, pick up a rock and place it inside a pipe in the right-of-way. On April 21, 2002, when the plaintiff was walking along the right-of-way between the parties' properties, she observed that several trees had been cut down on the defendants' property and that a trench had been dug that contained polyvinyl chloride (PVC) piping. She also noticed that the pipe near the southwest corner of her property had been blocked with a rock at one end and crushed and covered with dirt at the other end.

At the same time, she noticed that her yard was saturated with water and believed that the defendants' activities may have caused that condition. The next day, the plaintiff telephoned Stamford's building bureau to register a complaint, which then was forwarded to Stamford's environmental protection board (board). Richard Talamelli, an environmental planner for the board, accompanied by other board staff and city officials, inspected the defendants' property on April 23, 2002. Their inspection revealed significant disturbances in the wetlands area, including the cutting of trenches and the installation of drainage pipes. A fuel storage tank, an underground propane tank, a shed, a tented garage and a two story residence[3] had been erected on the defendants' property without the requisite building, health or zoning permits. Fill and debris had been deposited and graded in and proximate to the wetlands west of the dwelling. Talamelli also confirmed that the pipe in the Aquarion right-of-way had been crushed and that the outlet had been covered.

As a result of the defendants' activities, the city of Stamford, by complaint dated March 28, 2003, commenced an action against the defendants, claiming violations of the inland wetlands, zoning and public health

---

[3] Originally constructed in 1993 as an equipment or pool shed, the building had been expanded into a two story residence to be occupied by the defendants' daughter and son-in-law.

statutes and regulations. The plaintiff commenced the present action against the defendants, claiming that those same activities constituted a trespass and a nuisance and caused extensive water damage to her property. Both cases were consolidated for trial. The defendants entered into a stipulated judgment in the action with the city of Stamford prior to the commencement of trial, in which they admitted the alleged violations and agreed to pay fines and attorney's fees to the city. A copy of that judgment was submitted into evidence at trial.

At the conclusion of a six day trial in June and July, 2005, the court issued its memorandum of decision on August 10, 2005. In that decision, the court found that the defendants' activities on their property resulted in the drainage of water from their land onto the Aquarion right-of-way, that the slope of the land caused some of that water to flow across the right-of-way toward the plaintiff's property, that the destruction of the pipe in the right-of-way prevented that water from flowing from the plaintiff's property across the right-of-way onto the defendants' property, that the defendants' activities were undertaken with the intent of achieving such results and with complete indifference as to the effect that they would have on the plaintiff's property, and that the defendants' diversion of water and destruction of the pipe in the right-of-way caused flooding in the plaintiff's backyard as early as April, 2002. The court also found that Joseph Gabriele prevented the installation of a replacement pipe in the right-of-way in April, 2003, and that his action was intentional and without justification and resulted in continuing harm to the plaintiff's property.

The court awarded the plaintiff compensatory damages in the amount of $125,324, and indicated that a hearing would be scheduled on the plaintiff's demand for the award of attorney's fees. At the conclusion of

that hearing held on September 1, 2005, the court awarded the plaintiff punitive damages in the amount of $54,194.66, which resulted in a total award of $179,518.66. This appeal followed.

I

The defendants claim that the court improperly concluded that the evidence supported a finding that their actions constituted a trespass and a nuisance. Specifically, the defendants argue that the court (1) failed to understand that the pipe destroyed in the right-of-way had been replaced with a sturdier and larger pipe within one month of the plaintiff's complaint to the board, (2) mistakenly found that the defendants had installed a number of drainage pipes running from their property onto the right-of-way and (3) improperly concluded that the plaintiff proved her case when she failed to establish that any water from the defendants' property flowed onto her property or that Joseph Gabriele acted with the knowledge that his activities would result, to a substantial certainty, in the entry of water onto the plaintiff's property. We disagree.

The defendants are challenging the factual determinations of the court. "[W]e will upset a factual determination of the trial court only if it is clearly erroneous. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Stohlts* v. *Gilkinson*, 87 Conn. App. 634, 640, 867 A.2d 860, cert. denied, 273 Conn. 930, 873 A.2d 1000 (2005).

A

The defendants' first evidentiary claim is that the court failed to understand that the pipe destroyed in the right-of-way near the southwest corner of the plaintiff's property had been replaced with a sturdier and larger pipe within one month of the plaintiff's complaint to the board in April, 2002. The evidence at trial did indicate that Connecticut American Water Company, Aquarion's predecessor in interest, agreed to replace the damaged pipe in its right-of-way. It replaced the crushed corrugated pipe with a white PVC pipe in May, 2002. The defendants focus on the statement in the court's memorandum of decision that "[i]n April, 2003, Aquarion employees began work to replace the pipe under the right-of-way that had been destroyed by Joseph Gabriele."[4] That finding, they argue, indicates that the court overlooked the undisputed evidence that the pipe already had been replaced and resulted in the court's mistakenly attributing water problems on the plaintiff's property after May, 2002, to Joseph Gabriele.[5]

The record does not support the defendants' claim. There was testimony presented from which the court

[4] Even though Joseph Gabriele denied at trial that he had performed any of the activities alleged against him, he does not challenge the court's finding that "Joseph Gabriele was personally responsible for the actions" that resulted in the plaintiff's claimed damages in this appeal.

[5] In essence, the defendants' claim is that any water problems caused by the crushing of the initial pipe were resolved because a bigger and better replacement pipe was installed by Connecticut American Water Company. That claim fails for the reasons set forth in this section. The defendants attempt to expand that claim in their reply brief, however, by arguing that their responsibility for any subsequent damages ceased when the crushed pipe was replaced in May, 2002, and Aquarion began responding to the plaintiff's continuing concerns about the drainage from that pipe. The defendants cite no case law in support of that position. In any event, we decline to review the newly presented claim because "[c]laims . . . are unreviewable when raised for the first time in a reply brief." *Grimm* v. *Grimm*, 276 Conn. 377, 393–94 n.19, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006).

reasonably could find that the initial pipe was a twelve inch corrugated pipe and that the pipe that replaced it in May, 2002, was an eight inch PVC pipe. An Aquarion representative, the manager of the watershed and security department, testified that he and two other employees went to the plaintiff's property in 2003 to replace that eight inch PVC pipe with a new drainage pipe because the eight inch pipe was inadequate. At trial, Joseph Gabriele admitted that he prevented them from installing the new pipe in 2003 because the plaintiff had complained about his activities to the city. The plaintiff presented considerable evidence that the water problems on her property continued after May, 2002, when the eight inch pipe replaced the crushed twelve inch pipe, and that the situation did not improve until the installation of a twenty inch pipe in December, 2004. The court, therefore, reasonably could have found that the water problems caused by the destruction of the initial pipe had not been resolved with the installation of the replacement pipe in 2002.

Furthermore, the court's finding accurately reflects the testimony of the witnesses. The Aquarion employees had begun replacing the pipe under the right-of-way in April, 2003, when they were stopped at the direction of Joseph Gabriele. The pipe to be replaced was in the location of the pipe that had been destroyed by Joseph Gabriele. The omission of further language that the crushed pipe previously had been replaced by an inadequate pipe is of no significance.[6] More importantly, the court did not attribute all of the damage to the plaintiff's land to the destruction of that one pipe. It is clear from a review of the entire decision that the court

---

[6] It is clear from the record that the court was aware of the existence of the eight inch PVC pipe and did not, as argued by the defendants, "misunderstand" the evidence. At the conclusion of evidence, counsel made closing arguments. During those arguments, the court questioned counsel on various aspects of their cases. There was a dialogue between the court and counsel for the defendants about that very pipe.

concluded that the crushing of that pipe, in combination with the major activities undertaken by the defendants on their own property to divert water from the newly constructed house, resulted in the flooding on and damage to the plaintiff's property. For those reasons, the defendants' claim is without merit.

B

The defendants' next evidentiary claim is that the court was mistaken when it stated that "a number of new PVC pipes were discharging water from the defendants' property into the right-of-way." The defendants claim that there was only one pipe and that the offending pipe was removed in May, 2002. The court's erroneous finding as to the existence of a number of pipes, the defendants argue, affected its decision on both compensatory and punitive damages.

There was testimony that a newly installed six inch PVC pipe, laid alongside the Aquarion right-of-way in a newly excavated corridor on the defendants' property, was removed at some point in time prior to trial. The portion on the Aquarion right-of-way was removed by Aquarion employees, and the portion on the defendants' property was removed by the defendants. The exact date of removal is not clear from the record. In any event, it is clear from the record that there were a number of newly installed drainage pipes on the defendants' property and that some were remaining as late as September, 2003. The defendants' restoration plan, prepared by the defendants' environmental consultant and submitted to the city in 2004, contains the statement that "[t]wo unauthorized [six] inch pipes were installed near the eastern edge of the rear yard. . . . Both pipes were the subject of contention between [the board], the property owner, and adjacent neighbors." That plan was admitted as a full exhibit at the time of trial.

Again, however, as we previously noted, it was the combination of several activities of the defendants that led to the severe water problems on the plaintiff's property. The court does not state that the installation of the six inch PVC pipe on the defendants' property was primarily responsible for the plaintiff's damages. The defendants' filling, excavating, clearing of trees and vegetation, installation of drainage pipes and destruction of the pipe in the Aquarion right-of-way all contributed to the plaintiff's damages. Accordingly, the defendants' claim on that issue fails.

C

The defendants' final evidentiary claim is that the court could not find that the defendants' actions constituted a trespass and a nuisance because the plaintiff failed to establish that any water from the defendants' property flowed onto her property or that Joseph Gabriele acted with the knowledge that his activities would result, to a substantial certainty, in the entry of water onto the plaintiff's property.

This argument is nothing more than an attempt to retry the facts. Although the defendants' expert testified that the defendants' activities would not have resulted in water problems on the plaintiff's property, the plaintiff's expert provided the basis for the court's conclusion that there was a causal connection between the defendants' actions and the plaintiff's damages. The court specifically stated that it found the testimony of the plaintiff's expert witness to be more reliable than the testimony of the defendants' expert witness.[7] Despite conflicting testimony from various witnesses throughout the trial, there was evidence presented from which

---

[7] "The credibility of expert witnesses and the weight to be accorded to their testimony are within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible." (Internal quotation marks omitted.) *Ferri* v. *Pyramid Construction Co.*, 186 Conn. 682, 690, 443 A.2d 478 (1982).

the court reasonably could find that the defendants diverted water from their property away from their newly constructed dwelling, that the slope of their property was higher and resulted in excess water flowing over the Aquarion right-of-way and onto the plaintiff's property, and that their destruction of the pipe in the right-of-way prevented the water from flowing from the plaintiff's property, raising the level of the water table and flooding her yard.

Joseph Gabriele, a self-employed contractor, does not contest the court's findings that he was responsible for the destruction of the pipe in the Aquarion right-of-way or for the diversion of water away from the newly constructed dwelling on the defendants' property. He knew that the pipe in the Aquarion right-of-way carried water from the plaintiff's property across the right-of-way onto his property. In fact, on April 26, 2002, as evidenced by a complaint filed with the Stamford police department, he led officers to that pipe and stated that the plaintiff was illegally discharging her water onto his property. He indicated that she had reported violations against him and that he now wanted to report that she was in violation herself. The copy of the incident report, submitted into evidence, provides support for the conclusion that Joseph Gabriele knew of the existence and the purpose of the pipe that he had crushed.

Although he may not have comprehended fully the extent of the damage that his activities would cause to the plaintiff's property, such knowledge is not required, and the defendants have cited no case law to support that position. Accordingly, we conclude that the court's factual determinations were not clearly erroneous and support the court's conclusion that the defendants' activities constituted a trespass and a nuisance.

II

The defendants' next claim is that the court improperly calculated the amount of compensatory damages

to be awarded to the plaintiff. Specifically, they argue that the court should not have awarded almost $50,000 for the diminution in value of the plaintiff's property in addition to damages for the replacement of her driveway and the restoration of her backyard. The defendants claim that any injury to the property was temporary because all of the water problems had been resolved by the installation of the twenty inch pipe in the Aquarion right-of-way in December, 2004. The measure of damages for a temporary injury, they argue, does not include diminution in value damages.

As a preliminary matter, we set forth the applicable standard of review. "Normally, we review a court's determination of damages under an abuse of discretion standard. . . . When, however, a damages award is challenged on the basis of a question of law, our review is plenary." (Citation omitted.) *Motherway* v. *Geary*, 82 Conn. App. 722, 726, 846 A.2d 909 (2004).

"In determining the proper measure of damages, we are guided by the purpose of compensatory damages, which is to restore an injured party to the position he or she would have been in if the wrong had not been committed." (Internal quotation marks omitted.) *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 248, 905 A.2d 1165 (2006). "In determining the proper measure of damages for injury to land, [t]he legal effort . . . is to compensate the landowner for the damage done. . . . This is essentially true whether the injury is redressed under a theory of tort or breach of contract. . . . The basic measure of damages for injury to real property is the resultant diminution in its value. . . . There is, however, a well established exception to this formula; such diminution in value may be determined by the cost of repairing the damage, provided, of course, that that cost does not exceed the former value of the property and provided also that the repairs do not enhance the value of the property over what it was

before it was damaged." (Citations omitted; internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 59, 717 A.2d 77 (1998). These are, in effect, alternative measures of damages. Id., 60.

The record does not support the defendants' claim that all of the plaintiff's water problems were resolved when the twenty inch pipe was installed by Aquarion in December, 2004. The plaintiff testified that she noticed some improvements to her property after the installation of that pipe, particularly in the lawn area near the house. She did not testify that her property had been restored to its former condition. Further, her expert testified that the high water table on her property, caused by the defendants' actions, would not drop for at least a few years. For those reasons, the defendants' claim must fail.

Although it appears that the court may have added the costs of repair and restoration to an amount for the diminution in value of the plaintiff's property in assessing the compensatory damages award, thereby improperly combining alternative measures of damages, we cannot come to that conclusion without speculation. In its memorandum of decision, the court listed the costs of certain repairs and then summarized the plaintiff's testimony with respect to the property's decrease in value.[8] The court then concluded that "[b]ased on the foregoing, the court finds the plaintiff's fair, just and reasonable damages to be $125,324."

The court did not indicate whether the listed repairs would restore the plaintiff's property to its former condition, whether it considered the costs of those repairs

---

[8] The court stated: "However, the plaintiff testified that in her opinion, the total value of her property would be diminished by $100,000 to $200,000 if the damages to her property were not remedied. She further testified that she believed that the value of her property would be diminished by $25,000 to $50,000 even if all problems caused by the defendants' actions are resolved."

to be evidence of the diminution in value or how it incorporated the plaintiff's opinion as to the diminution in value into the total award. We will not speculate and, accordingly, cannot conclude that the court improperly combined the alternative measures of damages.

"It is incumbent upon the appellant to take the necessary steps to sustain its burden of providing an adequate record for appellate review. . . . [A]n appellate tribunal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, any decision made by us respecting the defendant's claims would be entirely speculative." (Citation omitted; internal quotation marks omitted.) *Heaven* v. *Timber Hill, LLC*, 96 Conn. App. 294, 312, 900 A.2d 560 (2006).

The defendants did not seek an articulation from the court as to the basis for its finding on compensatory damages. See Practice Book § 66-5. "An articulation may be necessary where the trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear. . . . It is well established that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . The . . . failure to seek an articulation of the trial court's decision to clarify the aforementioned issues and to preserve them properly for appeal leaves this court without the ability to engage in a meaningful review." (Citation omitted; internal quotation marks omitted.) *Heaven* v. *Timber Hill, LLC*, supra, 96 Conn. App. 312–13.

For those reasons, we conclude that the defendants have not provided a basis for a determination that the

court improperly calculated the amount of compensatory damages awarded to the plaintiff.

## III

The defendants' final claim is that the court improperly awarded punitive damages against Victoria Gabriele because she did not commit any of the offending actions that formed the basis for the court's finding of a trespass and a nuisance. Specifically, the defendants argue that her conduct was not "outrageous" and that her liability was premised solely on the fact that she is married to Joseph Gabriele.

That claim was not raised in the trial court. At no point in the six day trial, or during the closing argument of counsel for the defendants, was the argument made that Victoria Gabriele could not be found liable for the plaintiff's claims because of her lack of involvement in the alleged activities. Further, after the court issued its memorandum of decision finding a trespass and a nuisance and awarding compensatory damages, a hearing was scheduled to determine whether it would be appropriate to assess punitive damages in this case. At that hearing held on September 1, 2005, counsel for the defendants made no argument that the court's consideration of punitive damages should not extend to Victoria Gabriele. "We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *Swerdloff* v. *Rubenstein*, 81 Conn. App. 552, 554, 841 A.2d 222 (2004).

Furthermore, we note that both defendants signed the stipulation for judgment in the city of Stamford's action against them, which had been consolidated with this action. That stipulation was approved by the court, and judgment was rendered against them in accordance

with its terms and conditions. A copy of that judgment was submitted as an exhibit at trial. It provided that the defendants would pay fines and attorney's fees for their unauthorized actions. It also provided that the judgment was a final judgment enforceable by contempt proceedings.

Additionally, Victoria Gabriele testified at trial that she is the co-owner of the property at North Lake Drive and has lived there since 1991. She testified that she was present during the construction of the new dwelling in 2002 and did nothing to prevent it from being built. She also testified that she received the cease and desist order from the city and that she understood and accepted the stipulation for judgment when she signed it. For those reasons, the court properly awarded compensatory and punitive damages against Victoria Gabriele.

The judgment is affirmed.

In this opinion the other judges concurred.