PAUL BOYNE *v.* TOWN OF GLASTONBURY
(AC 29150)

Bishop, DiPentima and Mihalakos, Js.

Argued May 20—officially released September 30, 2008

*Ronald F. Ochsner*, for the appellant (plaintiff).

*Scott D. Camassar*, with whom was *Ryan McKain*, for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The plaintiff, Paul Boyne, appeals from the judgment of the trial court rendered following the granting of the motion for summary judgment filed by the defendant, the town of Glastonbury. The plaintiff filed a five count complaint against the defendant, primarily seeking injunctive relief, and the court rendered summary judgment as to all five counts. The plaintiff now claims that the court improperly granted the defendant's motion for summary judgment because (1) its legal conclusions were improper with respect to four of the five counts[1] and (2) certain material facts remain in dispute. We affirm the judgment of the trial court.

The following facts are not in dispute. On or about September 27, 1972, the defendant installed a storm water drainage system along Robin Road in Glastonbury. Since its installation in 1972, the drainage system has collected and discharged surface storm water into and through a ditch that runs along the northern portion of residential property located at 7 Sulky Lane in Glastonbury. The ditch is twelve feet in depth at its deepest point, with steep sidewall embankments, and is twenty-five to thirty-five feet wide at its widest point. There is no evidence that storm water flowing through the ditch ever has breached the sidewall embankments and flooded the higher elevations of the property, and no such breach is likely to occur.

A sidewalk runs parallel to Robin Road, and a split rail fence separates the sidewalk from the ditch. In

---

[1] The plaintiff's brief does not raise any claim with respect to the court's legal conclusions as to count two of his complaint for creation of a private nuisance. Accordingly, we do not review that aspect of the judgment.

addition, dense vegetation, including evergreen trees and deciduous shrubs, covers the edges of the ditch. The fence and the overgrown vegetation provide a barrier to inhibit public access to the ditch from Robin Road. The storm water, however, causes the embankments to erode, which, in turn, leads to the infrequent toppling of small trees and other vegetation growing nearby.

In September, 1997, the plaintiff and his former spouse purchased the property located at 7 Sulky Lane.[2] As a result of a court order in a dissolution action between the plaintiff and his former spouse, the plaintiff currently is not in possession of the property but retains title interest in the property.[3]

On July 17, 2006, the plaintiff filed a five count complaint against the defendant, seeking monetary damages and injunctive relief as a result of the defendant's discharge of surface storm water through the ditch on his property. In count one, the plaintiff alleged that the defendant's use of the ditch to discharge storm water violated General Statutes § 13a-138 (b).[4] In count two, the defendant alleged that the defendant had created

---

[2] The plaintiff's former spouse is not a party to this action.

[3] Pursuant to the judgment in the dissolution action, the defendant has been ordered to quitclaim his interest in the property to his former wife. That judgment is the subject of a separate appeal, which is currently pending before this court. In the event that the plaintiff is successful in his appeal from the judgment of dissolution in the separate action, the trial court may reconsider its financial orders, including its order that the plaintiff quitclaim his interest in the property to his former wife. See *Morris* v. *Morris*, 262 Conn. 299, 307, 811 A.2d 1283 (2003).

[4] General Statutes § 13a-138 provides: "(a) Persons authorized to construct or to repair highways may make or clear any watercourse or place for draining off the water therefrom into or through any person's land so far as necessary to drain off such water and, when it is necessary to make any drain upon or through any person's land for the purpose named in this section, it shall be done in such way as to do the least damage to such land.

"(b) Nothing in this section shall be so construed as to allow the drainage of water from such highways into, upon, through or under the yard of any dwelling house, or into or upon yards and enclosures used exclusively for the storage and sale of goods and merchandise."

a private nuisance on his property by removing some of the vegetation that had grown at and around the point where storm water is discharged into the ditch. Counts three, four, and five alleged that the defendant's discharge of storm water onto the plaintiff's property constituted a trespass to his land, a private nuisance and a public nuisance, respectively. At the time he filed his complaint, the plaintiff also filed an application for a temporary injunction. After a hearing, the court denied the application.

The defendant filed a motion for summary judgment as to all five counts of the plaintiff's complaint. On August 10, 2007, the court granted the defendant's motion. With respect to count one, the court ruled that the plaintiff's claim was time barred by General Statutes § 13a-138a. With respect to counts two, three and four, the court ruled that the defendant was entitled to judgment as a matter of law because the plaintiff no longer was in possession of the property. The court further concluded, with respect to counts two and four, that the plaintiff could not establish that any interference with his use and enjoyment of the property was unreasonable. Finally, the court concluded, as to count five, that the plaintiff could not establish that the defendant's conduct interfered with a public right. This appeal followed. Additional facts will be set forth as necessary.

We apply a well settled standard of review to the plaintiff's claim that the court improperly rendered summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of

showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Connecticut Medical Ins. Co.* v. *Kulikowski,* 286 Conn. 1, 4–5, 942 A.2d 334 (2008).

"[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough . . . for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of [an issue of] material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) *Cadlerock Joint Venture II, L.P.* v. *Milazzo,* 287 Conn. 379, 390, 949 A.2d 450 (2008).

"On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Connecticut Medical Ins. Co.* v. *Kulikowski,* supra, 286 Conn. 5.

## I

The plaintiff first claims that the court improperly construed § 13a-138a and, on the basis of that construction, improperly concluded that § 13a-138a barred his claim under § 13a-138 (b), count one of his complaint. The plaintiff argues that § 13a-138a limits only actions brought pursuant to subsection (a) of § 13a-138 but does not limit actions brought under subsection (b). We disagree.

The plaintiff's claim requires us to construe the statute at issue, § 13a-138a. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Harpaz* v. *Laidlaw Transit, Inc.*, 286 Conn. 102, 109, 942 A.2d 396 (2008).

"It is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning [a statute] must be construed, *if possible,* such that no clause, sentence or word shall be superfluous, void or insignificant." (Citations omitted; emphasis added; internal quotation marks omitted.) *American Promotional Events, Inc.* v. *Blumenthal,* 285 Conn. 192, 203, 937 A.2d 1184 (2008).

Section 13a-138a provides: "No action shall be brought by the owner of land adjoining a public highway . . . for recovery of damage to such property . . . by reason of any draining of water into or through such land by any town . . . *pursuant to subsection (a) of section 13a-138,* but within fifteen years next after the first occurrence of such drainage, except that if such

drainage first occurred prior to October 1, 1981, no such action shall be brought after October 1, 1986." (Emphasis added.) The plaintiff argues that the plain language of the statute evinces the legislature's intent to apply the fifteen year limitation period only to subsection (a) of § 13a-138 and not to subsection (b). To hold otherwise, he argues, would render a portion of the statute meaningless. Although we agree that the plaintiff's argument gives effect to every word in the statute, we conclude nonetheless that such an interpretation would yield an unworkable result.

If we follow the plaintiff's argument to its logical conclusion, as elucidated at oral argument before this court, there would be no limitation period applicable to § 13a-138 (b). Our Supreme Court recently reminded us, however, that public policy favors limitation periods for causes of action to grant some degree of certainty to litigants. *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 199, 931 A.2d 916 (2007). The court concluded that "when a statute includes no express statute of limitations, we should not simply assume that there is no limitation period. Instead, we borrow the most suitable statute of limitations on the basis of the nature of the cause of action or of the right sued upon." Id.

In the present case, even if we assume that § 13a-138a does not limit expressly a cause of action under § 13a-138 (b), the most suitable limitation period is the fifteen year period provided by § 13a-138a. Section 13a-138, in general, authorizes municipalities to drain water from public highways into or through the land of another under certain circumstances. A cause of action for a violation of § 13a-138 does not change significantly by pleading circumstances that violate subsection (b) rather than circumstances that violate subsection (a). Accordingly, we conclude that the court properly determined that § 13a-138a applied to count one of the plaintiff's complaint, which alleged a violation of § 13a-138

(b). We further conclude, on the basis of the undisputed facts, that the court properly rendered summary judgment with respect to count one of the complaint because the plaintiff's action was initiated beyond the fifteen year limitation period set forth in § 13a-138a.

## II

The plaintiff next claims that the court improperly rendered summary judgment as to counts three and four, trespass and private nuisance, respectively. Specifically, he argues that the court improperly concluded that as a matter of law, he could not prevail on those claims because he is not in actual possession of the property. We disagree with the plaintiff as to the third count but agree as to the fourth count. The court, however, properly granted the defendant's motion for summary judgment as to count four on the additional ground that interference with the plaintiff's use and enjoyment of the property was not unreasonable.

We begin our analysis with a brief discussion of the difference between trespass and nuisance claims. Historically, trespass and nuisance were two distinct common-law classes of injury involving real property. 9 R. Powell, Real Property (1999) § 64.01 [1], p. 64-5; 4 Restatement (Second), Torts § 821D, comment (a) (1979). A defendant who invaded a plaintiff's possession was a trespasser; a defendant who interfered with a plaintiff's use and enjoyment of his property by acts done elsewhere than on the plaintiff's land was subject to a claim of nuisance. 9 R. Powell, supra, § 64.01 [1], p. 64-5; 4 Restatement (Second), supra, § 821D, comment (a).

This ancient distinction between trespass and nuisance, on the basis of whether an invasion of a plaintiff's land was direct or indirect, is not followed by more recent cases. 9 R. Powell, supra, § 64.01 [2]; see 4 Restatement (Second), supra, § 821D. Instead, recent

case law treats trespass cases as involving acts that interfere with a plaintiff's exclusive possession of real property and nuisance cases as involving acts interfering with a plaintiff's use and enjoyment of real property. 9 R. Powell, supra, § 64.01 [2]; 4 Restatement (Second), supra, § 821D, comment (d). In other words, the distinction no longer rests on the means by which the invasion is effected but, instead, on the nature of the right with which the tortfeasor interferes. When viewed in this way, claims of nuisance may include an instance of trespass in that a physical entry onto land possessed exclusively by another also may affect, in the abstract, the possessor's use and enjoyment of the land. 9 R. Powell, supra, § 64.01 [2]; 4 Restatement (Second), supra, § 821D, comment (e) (invasion of possession of land normally involves some degree of interference with use and enjoyment, particularly when some harm inflicted on land itself). "Thus the flooding of [a] plaintiff's land, which is a trespass, is also a nuisance if it is repeated or of long duration . . . . The two actions, trespass and private nuisance, are thus not entirely exclusive or inconsistent, and in a proper case in which the elements of both actions are fully present, the plaintiff may have his choice of one or the other, or may proceed upon both." 4 Restatement (Second), supra, § 821D, comment (e). Connecticut courts have followed this trend. See *Hillman* v. *Greenwich*, 217 Conn. 520, 522, 528, 587 A.2d 99 (1991) (private nuisance existed when catch basins and storm drains built and maintained by defendant municipality collected and drained surface storm water over plaintiff's property, causing erosion); *Day* v. *Gabriele*, 101 Conn. App. 335, 345, 921 A.2d 692 (trespass and nuisance existed when defendants diverted water away from newly constructed dwelling, resulting in excess water flowing onto plaintiff's property and destruction of pipe in right-of-way prevented water from flowing from plaintiff's property),

cert. denied, 284 Conn. 902, 931 A.2d 262 (2007); *Gregorio* v. *Naugatuck*, 89 Conn. App. 147, 157, 871 A.2d 1087 (2005) (evidence of incursion of wastewater sufficient to prove private nuisance claim).

Accordingly, in Connecticut, "[t]he essentials of an action for trespass are: (1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury. . . . [B]ecause it is the right of the owner in possession to exclusive possession that is protected by an action for trespass, it is generally held that the intrusion of the property be physical and accomplished by a tangible matter. Thus, in order to be liable for trespass, one must intentionally cause some substance or thing to enter upon another's land." (Citations omitted; internal quotation marks omitted.) *Bristol* v. *Tilcon Minerals, Inc.*, 284 Conn. 55, 87–88, 931 A.2d 237 (2007). Further, "[s]ince trespass is a possessory action, it is incumbent on the plaintiff to prove possession, actual or constructive, in order to prevail." *Wadsworth Realty Co.* v. *Sundberg*, 165 Conn. 457, 461, 338 A.2d 470 (1973). Actual possession requires the plaintiff to demonstrate his exclusive possession and control of the land; constructive possession requires proof that the plaintiff was the owner of the land and that no one else had possession. *Lin* v. *National Railroad Passenger Corp.*, 277 Conn. 1, 20, 889 A.2d 798 (2006).

When damages are sought for a trespass that causes injury to the property, possession is measured at the time of the invasion, intrusion or entry. See 1 Restatement (Second), Torts § 162, comments (d) and (e) (1965); 75 Am. Jur. 2d, Trespass § 29 (2007). When a plaintiff seeks injunctive relief from continuing or repeated trespasses, however, the plaintiff must demonstrate his continuing possession of the property at the

time the injunction is issued. See *Roy* v. *Moore*, 85 Conn. 159, 166, 82 A. 233 (1912) (function of injunction is to afford preventive relief, not to redress alleged wrongs committed already); see also *McCullough* v. *Waterfront Park Assn., Inc.*, 32 Conn. App. 746, 749, 630 A.2d 1372 (although plaintiff held title to subject property, plaintiff not entitled to injunctive relief when she did not prove exclusive possession), cert. denied, 227 Conn. 933, 632 A.2d 707 (1993); 1 Restatement (Second), supra, § 162, comment (d); 42 Am. Jur. 2d, Injunctions § 101 (2000).

With these principles in mind, we conclude that the court properly determined that, as a matter of law, the plaintiff could not prevail on his trespass claim. The plaintiff sought only injunctive relief as to his trespass claim and did not dispute that he is no longer in possession of the property.[5] Accordingly, no genuine issue exists as to whether the defendant's conduct interferes with the plaintiff's exclusive possession of the property located at 7 Sulky Lane. See *Roy* v. *Moore*, supra, 85 Conn. 166; see also *Connecticut Light & Power Co.* v. *Fleetwood*, 124 Conn. 386, 390–91, 200 A. 334 (1938); *McCullough* v. *Waterfront Park Assn., Inc.*, supra, 32

---

[5] The plaintiff argues that because he is seeking injunctive relief and not monetary damages, exclusive possession is not a necessary element of his claim. We disagree.

In *McCullough* v.*Waterfront Park Assn., Inc.*, supra, 32 Conn. App. 746, this court stated: "An action for damages for trespass is a possessory action . . . for which title is only incidentally relevant. . . . When an injunction is sought to restrain a trespass, however, title is an essential element in a plaintiff's case. . . . Consequently, where both damages for trespass and an injunction are sought, both title to and possession of the disputed area must be proved . . . and the burden of proving them is on the plaintiff." (Citations omitted.) Id., 749. We concluded that the plaintiff in *McCullough* held title to the subject property. Id., 753. We further concluded, however, that "[b]ecause . . . the plaintiff did not prove the absence of actual possession in another, or her exclusive possession, she [was] not entitled to damages for trespass and [was] not entitled to injunctive relief . . . ." Id. Accordingly, we conclude that possession is a necessary element of a trespass claim irrespective of the relief sought.

Conn. App. 749. We conclude therefore that the court properly granted the defendant's motion for summary judgment as to count three, trespass.

With respect to count four, the court determined that because he is not in actual possession of the property the plaintiff also could not prevail on his private nuisance claim. A common-law private nuisance claim requires that "the defendant's conduct was the proximate cause of an unreasonable interference with the plaintiff's use and enjoyment of his or her property. The interference may be either intentional . . . or the result of the defendant's negligence. . . . Whether the interference is unreasonable depends upon a balancing of the interests involved under the circumstances of each individual case" and "should be [determined] in light of the fact that some level of interference is inherent in modern society. There are few, if any, places remaining where an individual may rest assured that he will be able to use and enjoy his property free from all interference. Accordingly, the interference must be substantial to be unreasonable." (Citations omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 361, 788 A.2d 496 (2002) (adopting basic principles of 4 Restatement [Second], Torts § 822 [1979]).

"The law of private nuisance springs from the general principle that [i]t is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor. . . . [I]n determining unreasonableness, [c]onsideration must be given not only to the interests of the person harmed but also [to] the interests of the actor and to the interests of the community as a whole." (Citations omitted; internal quotation marks omitted.) Id., 352. "Ultimately, the question of reasonableness is whether the interference is beyond that which the plaintiff should bear, under all of the circumstances of the particular case, without being compensated." Id.,

362. Whether an interference is unreasonable is a question of fact for the fact finder. *Berube* v. *Nagle*, 81 Conn. App. 681, 696, 841 A.2d 724 (2004); see also *Pestey* v. *Cushman*, supra, 361.[6]

Because a private nuisance claim does not require proof of possession, the court improperly concluded that the plaintiff's lack of exclusive possession of the property precluded his private nuisance claim. Although, pursuant to a court order, the plaintiff is not in possession of the property, he still maintains a nonpossessory interest in and a right to future use and enjoyment of the property. See 4 Restatement (Second), Torts § 821E, comment (f) (1979). The plaintiff therefore could prevail on his private nuisance claim if he could prove that by discharging storm water into the ditch, the defendant had interfered unreasonably with his right to future use and enjoyment of his property.[7]

We conclude nonetheless that the court properly granted the defendant's motion for summary judgment with respect to count four because the plaintiff failed to offer any evidence that the defendant's interference with his future use and enjoyment of his property was unreasonable. In reaching our conclusion, we note that there is no dispute that the drainage ditch never has flooded and likely never will flood the higher elevations of the plaintiff's property. The only damage to the property alleged by the plaintiff is "erosion of the soil,"

---

[6] In some cases, an interference may be so permanent and severe that it unreasonably affects not only the rights of one who is in possession of property, but also the right to future use and enjoyment by the owner of a nonpossessory estate. 4 Restatement (Second), Torts § 821E, comment (f) (1979). For example, a landlord may bring an action in nuisance for damage to his land at the hands of a neighbor, even though his tenant maintains possession of the land. Id.

[7] The parties do not dispute that the installation and maintenance of the storm water drainage system were intentional and that the defendant's conduct was the proximate cause of the discharge of storm water into the ditch on the plaintiff's property.

which is caused by the discharge of the storm water through the ditch. The plaintiff further asserts that the erosion of the embankment has led to the toppling of some trees.

The court found, and we agree, that the ditch "serves the obvious purpose of serving the community's need to divert and drain storm water safely and appropriately." As we observed previously, some level of interference is inherent in this activity. *Pestey* v. *Cushman*, supra, 259 Conn. 361. The issue, therefore, is whether the extent of the erosion and other damage to the plaintiff's land is beyond that which the plaintiff should bear, under all of the circumstances of this case, without being compensated. See id. On the basis of the record in this case, we conclude that it was not.

The evidence submitted by both parties demonstrates that the ditch typically has a very small amount of water trickling through it, except during storms. The defendant submitted further evidence that the ditch capably handles significant storm events and essentially has maintained its same shape and configuration for at least one decade. In response, the plaintiff submitted no evidence as to the degree of the erosion that occurs other than his testimony that the erosion was extensive enough to cause an occasional tree to topple during periods of increased wind. Furthermore, the defendant submitted evidence, which the plaintiff has not disputed, that the plaintiff exacerbates any erosion that occurs by routinely dumping yard waste into the ditch. Given this state of the evidence, we conclude that the interference with the plaintiff's interest in the property, as a matter of law, is not so substantial as to be unreasonable. No reasonable finder of fact could conclude otherwise. See *Gupta* v. *New Britain General Hospital*, 239 Conn. 574, 597, 687 A.2d 111 (1996). Accordingly, the court properly granted the defendant's motion for summary judgment as to count four.

## III

The plaintiff's next claim is that the court improperly rendered summary judgment as to count five, public nuisance. Specifically, he argues that a factual dispute exists regarding whether the ditch interferes with a public right. In support of his argument, he claims that the split rail fence and vegetation do not provide a sufficient barrier between the sidewalk and the ditch to prevent the public from accessing the ditch and befalling some harm therein. We are not persuaded.

To prove that a public nuisance exists, the plaintiff must prove, inter alia, that "the condition or conduct complained of interferes with a right common to the general public." *Keeney* v. *Old Saybrook*, 237 Conn. 135, 163, 676 A.2d 795 (1996).[8] "Nuisances are public where they . . . produce a common injury . . . . The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights. A public nuisance is one that injures the citizens generally who may be so circumstanced as to come within its influence." (Internal quotation marks omitted.) *Ganim*

[8] In *Pestey* v. *Cushman*, supra, 259 Conn. 358 n.6, our Supreme Court, in distinguishing private nuisance from public nuisance, observed that a four factor analysis may not prescribe adequately the proper inquiry in public nuisance cases. In deciding *Pestey*, however, the court declined to resolve this specific question. Id. The court simply noted that *Keeney* v. *Old Saybrook*, supra, 237 Conn. 162–63, and *State* v. *Tippetts-Abbett-McCarthy-Stratton*, 204 Conn. 177, 183, 527 A.2d 688 (1987), set forth slightly different tests for determining whether a public nuisance exists. Those differences do not affect the determination of the issue before us. Both *Keeney* and *Tippetts-Abbett-McCarthy-Stratton* hold that interference with a right common to the general public is an indispensable element of a public nuisance claim. See also *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 369, 780 A.2d 98 (2001); *Doe* v. *Manheimer*, 212 Conn. 748, 755 n.4, 563 A.2d 699 (1989), overruled in part on other grounds by *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 608, 662 A.2d 753 (1995); *Gregorio* v. *Naugatuck*, 89 Conn. App. 147, 150 n.4, 871 A.2d 1087 (2005); 4 Restatement (Second), Torts § 821B (1979). Because this holding is dispositive of the plaintiff's appeal, we also decline to address the broader question left open by *Pestey* as to the remaining essential elements of a public nuisance claim.

v. *Smith & Wesson Corp.*, 258 Conn. 313, 369, 780 A.2d 98 (2001). "Whether an interference is unreasonable in the public nuisance context depends . . . on (a) [w]hether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or (b) whether the conduct is proscribed by [law] . . . . 4 Restatement (Second), [Torts] § 821B [1979]. The rights common to the general public can include, but certainly are not limited to, such things as the right to use a public park, highway, river or lake. Id., § 821D comment (c)." (Internal quotation marks omitted.) *Pestey* v. *Cushman*, supra, 259 Conn. 356 n.5.

In this case, the plaintiff does not dispute that the ditch, at least the section of the ditch that he claims is creating a public nuisance, is located on his property and is not located on public land or in a public right-of-way. Thus, access to the ditch is not a right that is common to the general public.[9] Accordingly, we conclude, as a matter of law, that the plaintiff cannot prevail on his public nuisance claim.

## IV

The plaintiff's final claim is that the court improperly concluded that no material facts remain in dispute. Specifically, he claims that the following facts remain in dispute: (1) whether the ditch posed a hazard to public safety, (2) whether the defendant had easement rights to drain storm water through the ditch and (3) whether

---

[9] To the extent that the ditch poses a danger to trespassers, our review of the record in this case leads us to agree with the conclusion of the court that "[g]iven the degree to which there are natural and man-made barriers to the ditch, only a determined individual seeking access to the ditch would ultimately encounter an inherently dangerous area." In light of this conclusion, we further conclude, as a matter of law, that the ditch does not significantly or unreasonably interfere with the health and safety of trespassers.

the property had suffered any damage due to the storm water drainage. We disagree.

In light of our conclusion in part III, no factual dispute remains as to the danger that the ditch poses to public safety. See also footnote 8. Furthermore, the defendant's right to drain storm water through the ditch is derived from statute; see parts I and II; and does not turn on whether the defendant has easement rights to the ditch. The existence of an easement is therefore not material. Finally, the amount of damage caused to the property by the drainage of storm water is not in dispute. The only issue in dispute is whether the amount of damage is beyond that which the plaintiff should bear. In part II, we answered this question in the negative. Accordingly, no genuine issues remain as to the material facts in this case, and the court properly granted the defendant's motion for summary judgment as to all counts of the plaintiff's complaint.

The judgment is affirmed.

In this opinion the other judges concurred.