984 A.2d 1133 (2009)
118 Conn.App. 642
Andrew GENGARO
v.
CITY OF NEW HAVEN.
No. 29947.
Appellate Court of Connecticut.
Submitted on Briefs September 14, 2009.
Decided December 29, 2009.
*1135 Frank F. Aiello filed a brief for the appellant (plaintiff).
Audrey C. Kramer, assistant corporation counsel, filed a brief for the appellee (named defendant).
J. William Gagne, Jr., and Kimberly A. Cuneo, West Hartford, filed a brief for the appellee (defendant Local 3144, AFSCME, AFL-CIO).
BISHOP, DiPENTIMA and BERDON, Js.
DiPENTIMA, J.
The plaintiff, Andrew Gengaro, appeals from the judgment rendered by the trial court in favor of the defendants, the city of New Haven (city) and Local 3144, AFSCME, AFL-CIO (union). On appeal, the plaintiff claims that the court improperly granted the defendants' motions for summary judgment because it failed to consider all of the relevant factors underlying the plaintiff's claim of undue influence in determining whether there were material facts in dispute. We affirm the judgment of the trial court.
The following facts and procedural history are not in dispute. The city employed the plaintiff and assigned him to the city's livable cities initiative department (department). He was a dues paying member of the union. In February, 2004, the plaintiff was notified that he had been suspended indefinitely from his employment with the city pending an investigation into allegations of sexual harassment and inappropriate personal behavior. By certified letter dated March 16, 2004, the city notified the plaintiff that a pretermination hearing had been scheduled for March 26, 2004.
Subsequent to the pretermination hearing, the city and the union met for negotiations. They arrived at a confidential settlement agreement that called for the plaintiff's resignation in return for a payment of $7500, full payment of accrued vacation and sick pay, two months additional medical coverage and a promise by the city not to oppose any claim by the plaintiff for unemployment compensation. The agreement also provided that the plaintiff would not discuss publicly the terms of the agreement or the circumstances surrounding the plaintiff's employment. Both the city and the plaintiff also agreed not to make disparaging remarks publicly about each other or the circumstances surrounding the plaintiff's employment and separation from employment. The plaintiff alleged that the city and the union told him that if he did not sign the agreement, his employment would be terminated and he would not receive any of the benefits negotiated in the agreement. By signing the settlement agreement, the plaintiff acknowledged that he was advised to consult with an attorney regarding the agreement and the release of claims contained therein, that he had at least twenty-one days to consider the terms and decide whether to execute the agreement and that he could revoke the agreement within a seven day period after he had signed the agreement. The plaintiff signed the settlement agreement on June 9, 2004.
On April 8, 2005, the plaintiff filed a complaint requesting declaratory relief against the city. On September 19, 2005, the plaintiff filed an amended complaint, adding the union as a defendant. In the amended complaint, the plaintiff claimed that the city told him that if he did not sign the agreement, his employment would be terminated. The plaintiff also claimed that the union told him that it had conducted its own independent investigation and that if he did not sign the agreement, the union would not represent his interests any longer, including representation at any *1136 arbitration proceeding. The plaintiff also alleged that "[a]t the time of the ultimatum... [he had] ... serious financial difficulties... serious medical problems, and corresponding medical bills; was a care provider to an elderly family member who was a stroke survivor; would not have had the benefit of any further representation by his union; and would have seen embarrassing allegations made public; and therefore, the [p]laintiff's state of mind at the time he signed the agreement was that he had no reasonable alternative but to acquiesce to the [city's] ultimatum and accept the settlement agreement." The plaintiff also alleged in his complaint that the city breached certain sections of the agreement that were related to discussion of the settlement.[1] More specifically, he claimed that "`Andrew [J.] Rizzo [Jr.], [executive director of the department], at a department-wide staff meeting, offered an open door to any employee who felt a need to discuss the plaintiff's situation.'"
On May 10, 2007, the city filed a motion for summary judgment on the grounds that (1) there was no dispute of material fact as to whether the plaintiff was subject to undue influence and (2) the plaintiff could not accept benefits under a contract fairly made and at the same time question its validity. On July 24, 2007, the union filed a motion for summary judgment on identical bases. Both motions were accompanied by two sworn affidavits filed in support of both defendants' motions: a sworn affidavit by Emmet P. Hibson, Jr., director of the city's office of labor relations, and a sworn affidavit by Rizzo. The defendants' motions also were accompanied by a copy of the settlement agreement. The plaintiff filed nearly identical objections to both of the defendants' motions for summary judgment. In these objections, the plaintiff asserted that (1) there were questions of fact as to whether the plaintiff was subject to undue influence when he entered into the settlement agreement and (2) even if the settlement agreement was deemed enforceable, the terms of such an agreement would be a question of fact. The only documents submitted by the plaintiff with the opposition to the motions for summary judgment were his own identical sworn affidavits. The plaintiff's affidavits did not address the surrounding circumstances that were stated in his complaint. In fact, the plaintiff's affidavits focused on the claim that he was never presented personally with evidence gathered from the defendants' investigations and that the defendants offered him a settlement in lieu of pursuing the termination of his employment, which he referred to as an "ultimatum...."
The court granted the motions for summary judgment as to both defendants in May, 2008. In its decision, the court discussed *1137 extensively all affidavits, the agreement itself, as well as the relevant pleadings. The court found that "the mere fact that the city indicated it would terminate [the plaintiff's employment] if he did not sign the agreement without more cannot be considered the exercise of undue influence." The court also found that "[t]hese bare-boned facts alone do not rise to the level which would permit the court to conclude that the city had such control over the situation [the plaintiff] was faced with that his `free agency' was destroyed and he was `constrained' to do what he would not otherwise have done."
As to the plaintiff's second claim, which is that Rizzo's statements constituted a breach of the agreement by the city, the court found that "apart from [a] mere statement in the brief of the plaintiff, [the claim] is not supported by any affidavit or documentation." The court went on to note that the city did submit an affidavit rebutting this claim. On the basis of the evidence on the record, the court granted both defendants' motions for summary judgment. This appeal followed.
The standard for reviewing a court's rendering of summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party.... The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law....
"[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue.... It is not enough ... for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact ... are insufficient to establish the existence of [an issue of] material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]....
"On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court.... Our review of the trial court's decision to grant [a] defendant's motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) Boyne v. Glastonbury, 110 Conn.App. 591, 595-96, 955 A.2d 645, cert. denied, 289 Conn. 947, 959 A.2d 1011 (2008).
The plaintiff claims that the court improperly granted the defendants' motions for summary judgment because the court failed to consider all of the relevant factors he presented in determining whether there were material facts in dispute as to whether elements of undue influence were present. We do not agree.
Both defendants filed two affidavits and a copy of the settlement agreement in support of their motions for summary judgment. In his affidavit, Hibson attested that the plaintiff would have been entitled to have his grievance regarding the termination of his employment heard in arbitration and that the city was "ready, willing and able to proceed" with arbitration. Hibson also stated that the plaintiff had contacted the city's office of labor relations several times to confirm that payments *1138 pursuant to the agreement would be forwarded to the plaintiff. He also affirmed that the plaintiff actually received the benefits agreed to in the settlement. The confidential settlement agreement itself stated that by signing, the plaintiff was acknowledging that he was advised to consult with an attorney, that he had at least twenty-one days to consider the terms and to decide whether to execute the agreement and that he could revoke the agreement within a seven day period after he had signed the agreement. In his opposition to the motions for summary judgment, the plaintiff attested in his affidavits that "but for [the union's and the city's] ultimatum[s]," he would have challenged the termination of his employment in an arbitration hearing. The plaintiff offered no evidence raising an issue of material fact to support a claim of undue influence.
"Our law has long been clear that a `compromise agreement ... if free from fraud, mistake or undue influence ... is conclusive between the parties.'" Doherty v. Sullivan, 29 Conn.App. 736, 741, 618 A.2d 56 (1992). The plaintiff in this case claims that he was under undue influence when he signed the settlement agreement with the city. In Connecticut, "[u]ndue influence is the exercise of sufficient control over a person, whose acts are brought into question, in an attempt to destroy his free agency and constrain him to do something other than he would do under normal control.... It is stated generally that there are four elements of undue influence: (1) a person who is subject to influence; (2) an opportunity to exert undue influence; (3) a disposition to exert undue influence; and (4) a result indicating undue influence.... Relevant factors include age and physical and mental condition of the one alleged to have been influenced, whether he had independent or disinterested advice in the transaction ... consideration or lack or inadequacy thereof for any contract made, necessities and distress of the person alleged to have been influenced, his predisposition to make the transfer in question, the extent of the transfer in relation to his whole worth ... active solicitations and persuasions by the other party, and the relationship of the parties." (Citations omitted; internal quotation marks omitted.) Pickman v. Pickman, 6 Conn.App. 271, 275-76, 505 A.2d 4 (1986).
The defendants claim that the plaintiff cannot accept benefits under a contract fairly made and at the same time question the contract's validity.[2] They argue that even if the plaintiff presented sufficient evidence to create a genuine issue of material fact as to whether he was subject to undue influence, his actions in the months that followed his signing of the agreement constituted a ratification of the contract so that he could not, as a matter of law, assert a claim of undue influence in an attempt to void the contract. We agree. Our Supreme Court has addressed the issue of contract ratification in a similar context involving a claim of duress that induced the signing of a severance agreement to terminate employment. In Young v. Data Switch Corp., 231 Conn. 95, 646 A.2d 852 (1994), the defendant informed the plaintiff that his employment was going to be terminated and then sent a letter to the plaintiff that contained the details of the severance plan that the defendant was prepared to offer him. The letter offered to retain the plaintiff on a paid leave of absence for two additional months so that he could "retain [his] right to exercise *1139 a significant amount of company stock options." (Internal quotation marks omitted.) Id., at 97, 646 A.2d 852. The plaintiff signed the severance agreement. The plaintiff had several further communications with the defendant and eighteen months later brought a claim alleging that he believed that he had been coerced into signing the agreement so that he could retain his stock options and that the agreement should be voided. Id., at 98-99, 646 A.2d 852. The Supreme Court held: "Section 381(1) of the Restatement (Second) [of Contracts] provides that `the power of a party to avoid a contract for ... duress... is lost if, after the circumstances that made it voidable have ceased to exist, he does not within a reasonable period of time manifest to the other party his intention to avoid it.' As a general matter, comment (a) to § 381 provides that `what time is reasonable depends on all the circumstances, including the extent to which the delay was or was likely to be prejudicial to the other party....' Comment (a) to § 381 adds, however, that `[o]rdinarily, if the party with the power of avoidance retains during the delay something that he has received from the other party, avoidance will be precluded by the rule stated in § 380.' Section 380(1) of the Restatement (Second), in turn, provides that `[t]he power of a party to avoid a contract for ... duress ... is lost if, after the circumstances that made the contract voidable have ceased to exist, he ... acts with respect to anything that he has received in a manner inconsistent with disaffirmance.' Read in its entirety, therefore, the [R]estatement equates the retention of benefits with `delay [that is] prejudicial to the other party' and imposes strict time constraints on the avoidance for duress under such circumstances." Young v. Data Switch Corp., supra, at 101-102, 646 A.2d 852.
"[R]atification of a voidable contract is ordinarily a matter of intent.... As the plaintiff acknowledges, however, intent may be inferred from silence as well as from affirmative acts.... The question necessarily becomes, therefore, whether the trial court abused its discretion in concluding that, as a matter of law, the plaintiff could no longer disaffirm the severance agreement in this case." (Citations omitted.) Id., at 102, 646 A.2d 852. The court in Young cited approvingly the case law of other jurisdictions, which demonstrates that "the dispositive question is not why the plaintiff chose not to disaffirm a contract that is voidable for duress, but whether, once the duress had ceased, he had the opportunity to do so. These cases hold, in accordance with the Restatement, that ratification results, as a matter of law, `if the party who executed the contract under duress accepts the benefits flowing from it or remains silent or acquiesces in the contract for any considerable length of time after opportunity is afforded to annul or avoid it.'" Id., at 103, 646 A.2d 852. The time elapsed between the signing of the contract and the lawsuit in Young was eighteen months, but the court approvingly cited cases from other jurisdictions in which the time period at issue was two, three, five, ten, eleven and eighteen months. Id.
The plaintiff in this case brought an action to void the agreement because of undue influence, not duress, but the two concepts are related. "Because of their similarities, the concepts of duress and undue influence are often discussed in conjunction with each other. See 25 Am. Jur.2d, Duress and Undue Influence §§ 1 through 49 (1966). Although distinctions exist between the two concepts, contracts obtained by duress or undue influence are deemed invalid because in both circumstances the free assent of one of the parties *1140 in making the contract is lacking.... Moreover, acts of compulsion or influence by one party on another giving rise to a claim of duress or a claim of undue influence must be operative at the time the contract is entered into. Shlensky v. Shlensky, [369 Ill. 179, 186, 15 N.E.2d 694 (1938)]; 17 C.J.S., Contracts § 180(c) (1963); 25 Am.Jur.2d, [supra, at § 13]. Because both must be operative at the time the contract is entered into, it is not [always] necessary ... that we distinguish between duress and undue influence." (Citations omitted.) Jenks v. Jenks, 34 Conn.App. 462, 468, 642 A.2d 31 (1994), rev'd on other grounds, 232 Conn. 750, 657 A.2d 1107 (1995). Therefore, the reasoning set forth in Young can be applied to this case.
In this case, the plaintiff waited ten months to file the first complaint against the city, and, as is reflected in the record, the plaintiff made several calls to the city to ensure that he would continue receiving payments pursuant to the agreement in the months after the agreement was signed. Further, the plaintiff did receive the benefits that were bargained for in the agreement. As the court stated in its memorandum of decision granting the motions for summary judgment: "How can a contractual arrangement be declared null and void when one of the parties has received the major part of the benefits contracted for?" Therefore, because the plaintiff had seven days to rescind, pursuant to the terms, after the signing of the agreement, took actions to confirm that he would receive the benefits of the agreement, accepted and enjoyed the benefits of the agreement and did not bring an action claiming that the agreement was void until at least ten months after it was signed, he effectively ratified the agreement, and, therefore, the agreement cannot, as a matter of law, be voided due to undue influence.[3]
Accordingly, the defendants were entitled to judgment as a matter of law, and the court properly rendered summary judgment in this case.
The judgment is affirmed.
In this opinion the other judges concurred.
NOTES
[1] As the court noted in its memorandum of decision: "Section 8(c) states that `the city agrees that it will not in a public forum or in the media make any disparaging remarks about [the plaintiff], or the circumstances surrounding his employment and/or his separation from employment from the city.' The plaintiff then refers to § 8(a) of the agreement which explicitly applies to [the plaintiff] only and says that he shall not `in any manner publish, publicize, disclose or otherwise make known or permit or cause to be made known to any third person the terms and conditions of this agreement.' `Third person' is defined as `members or [the plaintiff's] nonimmediate family, any past or present employees of the city or any member of such employee's family, union, association or group.'"

"The immediate problem for the plaintiff is how his claim that the parties had an `understanding' that paragraph 8(a) of the contract would apply to the city could be advanced without violating the parol evidence rule. The language of that paragraph is clear and unambiguous in stating that it applies to [the plaintiff] and not to any other party to the agreement."
[2] Both defendants raised this as an alternate argument in the memoranda of law in support of their motions for summary judgment, as well as on appeal.
[3] The defendants' primary claim on appeal is that there was not sufficient evidence to support the claim of undue influence. The court granted the motions for summary judgment on the ground that there were not sufficient facts to create a genuine issue of material fact, which is required to support a claim of undue influence. Because we conclude that the plaintiff ratified the agreement and cannot, as a matter of law, void the agreement on the basis of undue influence, we do not address this argument. Cf. Hopkins v. O'Connor, 282 Conn. 821, 827, 925 A.2d 1030 (2007) ("[w]here the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it" [internal quotation marks omitted]).