## CONNECTICUT MEDICAL INSURANCE COMPANY *v.* JOHN KULIKOWSKI
## (SC 17930)

Rogers, C. J., and Norcott, Vertefeuille, Zarella and Schaller, Js.

Argued October 26, 2007—officially released March 18, 2008

*Richard A. Silver*, with whom were *Amanda R. Whitman* and, on the brief, *Angelo A. Ziotas*, for the appellant (substitute defendant Marion P. Kulikowski).

*Louis B. Blumenfeld*, with whom was *Lorinda S. Coon*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. In this action for a declaratory judgment, the substitute defendant, Marion P. Kulikowski,[1]

---

[1] The original defendant, John Kulikowski, died on October 4, 2006. Marion P. Kulikowski was substituted as the defendant in her capacity as the administratrix of the estate of John Kulikowski, and we refer to her as the defendant in this opinion. All references to Kulikowski in this opinion are to John Kulikowski.

appeals from the summary judgment of the trial court rendered in favor of the plaintiff, Connecticut Medical Insurance Company. The sole issue in this appeal is whether the trial court properly concluded as a matter of law that a nurse practitioner referenced by job title, but not listed as a named insured, in the declarations page of a physician's medical malpractice insurance policy, was not a separately insured individual under the policy. The defendant contends that the trial court improperly concluded that the subject policy was unambiguous and that no genuine issue of material fact existed as to whether the nurse practitioner, Ann Ciambriello, was a named insured under the policy. We affirm the judgment of the trial court.

The record reveals the following undisputed relevant facts. John Kulikowski, the original defendant in the present case; see footnote 1 of this opinion; had brought the underlying medical malpractice action against James Ralabate, a physician, and Ciambriello, Ralabate's employee, making separate and individual allegations of medical negligence against each of them in connection with his claim that they had failed to diagnose and treat him for a central nervous system infection.[2] The plaintiff had issued a professional liability insurance policy to Ralabate that provided individual professional liability coverage limits of $1 million per medical incident with a $4 million aggregate limit. In accordance with the policy terms, the plaintiff provided a defense for both Ralabate and Ciambriello in the underlying action. In partial settlement of the underlying action, the plaintiff paid Kulikowski $1 million.[3]

---

[2] Ralabate, Ciambriello and a third defendant in the underlying action, Primary Care Associates, P.C., are not parties to the present action for declaratory judgment and did not participate in this appeal.

[3] As part of the settlement agreement in the underlying action, the parties acknowledged that the question of whether Ciambriello was covered as a separate insured under the policy, creating a separate $1 million limit of liability under the policy, remained in dispute. They contemplated resolution of this remaining issue either through a declaratory judgment action or

The plaintiff instituted this action seeking a declaratory judgment that Ciambriello is not a separately insured individual under the policy entitled to a separate $1 million limit of professional liability coverage separate from and additional to the $1 million limit of individual professional liability coverage provided to Ralabate. The plaintiff moved for summary judgment, arguing that no genuine issue of material fact existed as to whether Ciambriello was a separately insured individual under the terms of the policy. The trial court agreed and rendered summary judgment in favor of the plaintiff. This appeal followed.[4]

The defendant claims that the trial court improperly concluded that as a matter of law, Ciambriello was not a separately insured individual under the policy. Specifically, the defendant contends that the declarations page—which referenced by job title two nurse practitioners employed by Ralabate, and listed "[p]aramedical [e]mployee [c]overage," a term not defined anywhere in the policy, as one type of coverage provided under the policy—rendered the policy ambiguous as to whether Ciambriello was a named insured, or, at least, a separately insured individual, under the policy. We are not persuaded.

We first set forth the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

binding arbitration. The plaintiff agreed that, if Kulikowski should prevail in the subsequent action to determine the remaining disputed issue, it would pay to Kulikowski an additional sum of $750,000 upon conclusion of that action.

[4] Kulikowski appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 198–99, 931 A.2d 916 (2007).

"[C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo." (Internal quotation marks omitted.) *Galgano* v. *Metropolitan Property & Casualty Ins. Co.*, 267 Conn. 512, 519, 838 A.2d 993 (2004). "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract . . . ." (Internal quotation marks omitted.) *Enviro Express, Inc.* v. *AIU Ins. Co.*, 279 Conn. 194, 199, 901 A.2d 666 (2006). In accordance with those principles, "[t]he determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning." (Internal quotation marks omitted.) *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 267, 819 A.2d 773 (2003). Under those circumstances, the policy "is to be given effect according to its terms." (Internal quotation marks omit-

ted.) *Kitmirides* v. *Middlesex Mutual Assurance Co.*, 65 Conn. App. 729, 733, 783 A.2d 1079 (2001), aff'd, 260 Conn. 336, 796 A.2d 1185 (2002). "When interpreting [an insurance policy], we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." (Internal quotation marks omitted.) *R.T. Vanderbilt Co.* v. *Continental Casualty Co.*, 273 Conn. 448, 462, 870 A.2d 1048 (2005).

In determining whether the terms of an insurance policy are clear and unambiguous, "[a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Citation omitted; internal quotation marks omitted.) *HLO Land Ownership Associates Ltd. Partnership* v. *Hartford*, 248 Conn. 350, 357, 727 A.2d 1260 (1999). "As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." (Internal quotation marks omitted.) *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 255 Conn. 295, 305, 765 A.2d 891 (2001). Under those circumstances, "any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . This rule of construction may not be applied, however, unless the policy terms are indeed ambiguous." (Internal quotation marks omitted.) *Enviro Express, Inc.* v. *AIU Ins. Co.*, supra, 279 Conn. 199.

Because this appeal comes to us from a grant of summary judgment, and because of the standards for interpreting insurance contracts, the dispositive question is whether the policy language is ambiguous as

to whether the parties intended Ciambriello to be a separately insured individual under the policy. We previously addressed a similar issue in an appeal involving nearly analogous policy language. In *Kitmirides* v. *Middlesex Mutual Assurance Co.*, supra, 260 Conn. 336, the issue presented was the scope of the coverage "afforded by an insurance policy that list[ed] a person as a driver of a covered vehicle on the declarations page, but [did] not list that person as a named insured." *Kitmirides* v. *Middlesex Mutual Assurance Co.*, supra, 65 Conn. App. 730.[5] The plaintiff in *Kitmirides* argued that, because she was listed as an additional driver on the declarations page of her father-in-law's automobile insurance policy, and because the policy did not define the term driver, the policy was ambiguous as to whether she was an insured individual entitled to underinsured motorist coverage under the policy. Id., 733. In concluding that the policy unambiguously excluded the plaintiff from underinsured motorist coverage under the policy, despite the inconsistencies between the declarations page and the policy provisions, we adopted the Appellate Court's reasoning, which relied on the definition of "[c]overed person" in the policy as "1. You or any family member; 2. Any other person occupying your covered auto; or 3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above." (Internal quotation marks omitted.) Id., 732–33. The policy defined the term "you" as "[t]he [n]amed [i]nsured shown in the [d]eclarations . . . ." (Internal quotation marks omitted.) Id., 733. We affirmed the Appellate Court's conclusion that the term

[5] We cite to the Appellate Court's opinion in *Kitmirides* because in our resolution of the appeal from the Appellate Court, we stated that "[a] further discussion by this court would serve no useful purpose"; *Kitmirides* v. *Middlesex Mutual Assurance Co.*, supra, 260 Conn. 339; because "[t]he thoughtful and comprehensive opinion of the Appellate Court properly resolved the issue in [that] certified appeal." Id., 338–39.

"named insured" was unambiguous, despite the apparent conflict between the declarations page and the policy provisions, because the policy was not *"reasonably* susceptible to more than one reading with regard to a listed driver's right to underinsured motorist coverage." (Emphasis in original.) Id., 734. We agreed with the Appellate Court's analysis leading to that conclusion, which relied on the fact that the policy provisions clearly and unambiguously required that, in order to be a covered person under the underinsured motorist coverage provided by the policy, a person must be a named insured in the declarations. Id. Those provisions were not rendered ambiguous by the fact that the declarations page was inconsistent with them.

We are presented with strikingly similar policy provisions and arguments in the present appeal. Just as in *Kitmirides*, the defendant in the present case relies on undefined terms in the declarations page, and inconsistencies between the declarations page and the policy provisions, to argue that the policy is ambiguous as to who is an insured. We turn, therefore, to the policy language. The policy provides coverage to "[p]ersons [i]nsured" under the policy for "claims and suits arising from medical incidents . . . ." Under the section entitled "Persons Insured," the policy states that, "each individual named in the declarations [page] as an insured" is an "insured" under the individual professional liability coverage provided in the policy. The policy also defines "[n]amed [i]nsured" as "the person(s) or entity named as the insured in the declarations of this policy." The section setting forth the limits of individual professional liability provides that the limit of $1 million for each medical incident "shall apply separately to *each individual insured named* in the declarations." (Emphasis added.) All of these provisions consistently state that, in order for an individual to be an insured under the policy for purposes of

determining the per incident limit applicable to a claim, the individual must be named as an insured on the declarations page.

The first section on the declarations page is entitled "Name and Address of Insured."[6] Only one name, "James Patrick Ralabate," appears in this section. No other individual is named as an insured on the declarations page. The next section of the declarations page, entitled "Professional Liability Coverages," lists two categories of coverage: individual coverage and paramedical employee coverage. Both categories are selected in this portion of the declarations, selections that are indicated by an "x" marked in the box preceding each type of coverage. The applicable premiums for each type of coverage are specified in the next section: $6907 for individual coverage and "no charge" for paramedical employee coverage. In the row specifying that paramedical employee coverage is free of charge, immediately after "[p]aramedical [e]mployee [c]overage" is the typewritten entry "2 [n]urse [p]ractitioners."

Based on the policy language, it is clear that Ciambriello is not a named insured. The policy clearly and unambiguously identifies only one named insured, Ralabate. Ciambriello is not named in the declarations, either as a named insured or in any other section of

---

[6] The declarations page that was operative at the time of the underlying medical malpractice incident contained an error that subsequently was corrected by Ralabate and the plaintiff. The original declarations page did not have paramedical employee coverage checked, nor did it state "2 [n]urse [p]ractitioners." Denise Funk, the chief executive officer for the plaintiff, stated in an affidavit that this declarations page should have included paramedical employee coverage "in the same manner as the previous two policy years." During those policy years, the declarations page contained the language "2 [n]urse [p]ractitioners." We rely on Funk's affidavit because this evidence is used to add a missing term and to correct a mistake between the plaintiff and Ralabate, and thus does not violate the parol evidence rule. *HLO Land Ownership Associates Ltd. Partnership* v. *Hartford*, supra, 248 Conn. 357–59.

the declarations page. This fact resolves one of the defendant's arguments on appeal, namely, that the policy reasonably could be construed as listing Ciambriello as a named insured. As we previously have stated, "the named insured refers only to the name actually appearing on the insurance policy." (Internal quotation marks omitted.) *Ceci* v. *National Indemnity Co.*, 225 Conn. 165, 172, 622 A.2d 545 (1993). That rule is consistent with the definition of "[n]amed [i]nsured" in the policy, as "the person(s) or entity named as the insured in the declarations of this policy." Ciambriello cannot, under the facts of the present case, reasonably be considered a named insured under the policy.[7] Under the individual coverage provided in the policy, therefore, there can be only one applicable limit of liability per medical incident—$1 million, as set forth in the limits of liability provision in the policy.

The remaining question is whether, despite the fact that Ciambriello is not a named insured under the policy, and is not entitled to a separate limit of liability under the individual coverage provided in the policy, the policy nevertheless reasonably could be construed as designating her as a separately insured individual, entitled to a separate $1 million per medical incident limit of coverage. The analysis employed by the Appellate Court in *Kitmirides*, which relied on the construction of the policy as a whole and focused on the question of whether the policy was reasonably susceptible to

---

[7] The defendant asserts that we should look to an exchange between the plaintiff and Ralabate, in the form of letters, to demonstrate that Ralabate intended to include Ciambriello as a named insured under his insurance policy. Because we conclude that the language of this particular policy is clear and unambiguous, and because the defendant wishes to use this evidence to contradict the terms of the insurance policy as informed by our case law that governs questions of named insureds, we must decline to consider parol evidence in interpreting the meaning of the disputed language contained in the declarations. *HLO Land Ownership Associates Ltd. Partnership* v. *Hartford*, supra, 248 Conn. 357–59.

more than one reading, provides guidance on this issue. *Kitmirides* v. *Middlesex Mutual Assurance Co.*, supra, 65 Conn. App. 734; *Kitmirides* v. *Middlesex Mutual Assurance Co.*, supra, 260 Conn. 338–39 (adopting Appellate Court's analysis).

We first set out the policy inconsistencies on which the defendant relies. The defendant emphasizes that the policy neither defines the term "[p]aramedical [e]mployee [c]overage," which is the type of coverage purportedly provided as to the two nurse practitioners listed on the declarations page, nor provides any explanation for the operative effect of listing "2 [n]urse [p]ractitioners" under paramedical employee coverage. By contrast, the other type of coverage listed on the operative declarations page, individual coverage, is referenced throughout the policy, in connection with numerous coverage issues, including the applicable limits of liability, the rules governing who is a named insured and the definition of "medical incident." Other provisions in the policy add to the confusion as to the meaning of paramedical employee coverage. Most importantly, any negligence on the part of the two nurse practitioners employed by Ralabate would be covered under the individual professional liability coverage provided by the policy. As we previously stated, the policy provides coverage for claims and suits arising from "medical incidents." The policy defines "[m]edical [i]ncident" with reference to individual professional liability, but not with reference to paramedical employee liability. Because Ralabate purchased individual professional liability coverage, we look to that definition of medical incident, which is defined as "any act or omission in the furnishing of professional services . . . by the [i]nsured, *any employee of the insured,* or any person acting under the personal direction, control or supervision of the insured . . . ." (Emphasis added.) It is undisputed that Ciambriello was an employee of

Ralabate, and that Ralabate was an insured under the individual professional liability coverage provided under the policy. If the declarations page had contained no reference to paramedical employee coverage, or to the two nurse practitioners listed under that coverage, the defendant would have been able to recover for any "act or omission" by Ciambriello "in the furnishing of professional services" to Kulikowski.[8] It appears, therefore, that the inclusion of paramedical employee coverage for two nurse practitioners on the declarations page added nothing to Ralabate's coverage under the policy. In other words, it appears that the language is superfluous.

The defendant relies on the lack of clarity concerning the meaning of the term paramedical employee coverage and the listing of two nurse practitioners to argue that the policy was ambiguous as to whether Ciambriello was a separately insured individual, entitled to a separate and additional $1 million limit of liability per medical incident. The defendant particularly relies on two rules of construction. First, "a policy should not be interpreted so as to render any part of it superfluous." (Internal quotation marks omitted.) *R.T. Vanderbilt Co.* v. *Continental Casualty Co.*, supra, 273 Conn. 468. In applying that rule of construction, however, we are guided by *Kitmirides*, and are mindful that the policy is ambiguous only if it is *reasonably* susceptible to more than one reading. *Kitmirides* v. *Middlesex Mutual Assurance Co.*, supra, 65 Conn. App. 734. In making that determination, "we must look at the contract as a

---

[8] The only explanation that the plaintiff has provided for the inclusion of the relevant language is that it was intended to inform the plaintiff that Ralabate had two nurse practitioners in his employ. In explaining why it would be necessary for Ralabate to convey information about these two particular employees, as opposed to other employees in the practice, the plaintiff suggests that listing the nurse practitioners on the policy was in recognition of the facts that a nurse practitioner is more likely to be named separately in a lawsuit, and to be sued separately, without the employer.

whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." (Internal quotation marks omitted.) *R.T. Vanderbilt Co.* v. *Continental Casualty Co.*, supra, 462. Although the interpretation advocated by the defendant would avoid rendering the term paramedical employee coverage and the listing of the two nurse practitioners on the declarations page superfluous, it would not yield a reasonable overall result. Second, the defendant relies on the canon of construction that requires a court, upon determining that an insurance policy's language is ambiguous, to construe the policy against the insurer. *Enviro Express, Inc.* v. *AIU Ins. Co.*, supra, 279 Conn. 199. The result advocated by the defendant, however, would require us, in effect, to do far more than construe the policy against the plaintiff; it would require us to rewrite the policy simply because the defendant successfully has established an ambiguity in the policy. We address each of the two canons of construction relied on by the defendant in turn.

As to the first canon, although the defendant's reading avoids rendering some policy language superfluous, that reading is not based on a reasonable overall interpretation of the policy language. First, the defendant's reading is inconsistent with the definition of "[i]nsured" in the policy as "the person(s) or entity named as the insured in the declarations of this policy." Second, that reading would directly conflict with other language in the insurance policy that indicates that the $1 million limit for individual professional liability applies "separately to each individual insured named in the declarations." Third, the defendant's position cannot be reconciled readily with the fact that the declarations page expressly provided that there was no charge for the paramedical employee coverage. It is not reasonable to suppose that the plaintiff extended, without defining

paramedical employee coverage in the policy, and without setting forth applicable limits of liability or defining what would constitute a medical incident under that type of coverage, an additional limit of $1 million per medical incident of coverage for the two nurse practitioners, without charging for that additional coverage. Such an interpretation would suppose that the plaintiff subjected itself to significant additional liability, without the usual protections of defining that coverage within the policy provisions, and at no additional charge. Fourth, creating an additional liability limit of $1 million for paramedical employees is inconsistent with the section that sets forth the applicable liability limits under the policy, and identifying those limits only in connection with individual liability. Fifth, interpreting the policy to provide a separate $1 million per medical incident limit for two unnamed nurse practitioners would mean that the separate limit would apply even if Ralabate terminated the employment of the original two nurse practitioners and hired two new nurse practitioners to replace them, thus creating a type of "floating coverage" attached to the two positions, rather than to particular individuals. This would be so despite the fact that there is no provision in the policy signifying that an individual who is not a named insured nonetheless may be a separately insured individual under the policy.

All of these reasons persuade us that, although the meaning of paramedical employee coverage for the two nurse practitioners may not be clear, we can be certain what it does not signify. No reasonable overall interpretation of the policy would yield the conclusion that the undefined paramedical employee coverage creates an additional and separate $1 million per medical incident liability limit. Such an interpretation would require reading out the other provisions in the policy that clearly and consistently require that, in order for an

individual to be an insured under the policy, that individual must be listed as a named insured on the declarations page. The mere fact that the defendant has shown that an ambiguity exists somewhere in the policy does not require the court to rewrite the policy without regard to the reasonableness and consistency of the whole document. See *Kitmirides* v. *Middlesex Mutual Assurance Co.*, supra, 65 Conn. App. 732.

This brings us to the second canon on which the defendant relies, namely, that an ambiguous policy is construed against the insurer. A party claiming that an insurance policy is ambiguous as to a particular issue, however, must do more than establish that the policy has *some* ambiguous language. That is, merely establishing that the term paramedical employee coverage for the two nurse practitioners is ambiguous is not sufficient to render ambiguous the remainder of the policy language that unambiguously requires an insured under the policy to be listed as a named insured on the declarations page. There must be a nexus between the ambiguity and the disputed issue. Requiring such a nexus is consistent with the analysis in *Kitmirides*, in which we agreed with the Appellate Court's rejection of the plaintiff's argument that, "because she [was] listed on the declarations page under the heading, 'DRIVER INFORMATION,' and the term driver [was] not defined or explained anywhere in the policy, the policy *as a whole* [was] ambiguous"; (emphasis added) id.; and that, accordingly, the policy's definition of "covered person[s]" was also "automatically ambiguous." Id. The ambiguous language must render the policy ambiguous as to the relevant issue. The defendant has failed to establish that nexus. Accordingly, the trial court properly concluded that the policy clearly and unambiguously provided coverage to only one named insured, Ralabate, and that, as a matter of law, the policy was not rendered ambiguous by the inclusion of paramedical

16

employee coverage for two nurse practitioners on the declarations page.

We are unpersuaded by the defendant's argument that our decision in *Ceci* v. *National Indemnity Co.*, supra, 225 Conn. 166, requires the opposite result. In *Ceci*, we concluded that the plaintiff was "entitled to underinsured motorist benefits, as a 'family member' of the insured, pursuant to the business automobile insurance policy issued by the defendant to the plaintiff's corporate employer," despite the fact that the insured was a corporation that had no family members.[9] The policy listed the corporation, which was operated by the plaintiff's family, as the insured. Id., 167. The underinsured motorist coverage provision provided that "[i]ndividuals covered by the provision included: (1) you or any family member (2) anyone else occupying a covered auto or a temporary substitute for covered auto." (Internal quotation marks omitted.) Id. We concluded that, "[b]ecause corporations do not have families"; id., 174; the inclusion of the language relating to family members rendered the policy ambiguous as to whether the plaintiff was covered under the underinsured motorist coverage provision. Id., 174–75. Applying the principle that ambiguous provisions should be construed against the insurer, we concluded that the plaintiff was covered under the provision. Id., 175.

In *Ceci*, we relied heavily on the principle that provisions in insurance contracts must be "construed as laymen would understand [them] and not according to the interpretation of sophisticated underwriters" and that "the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." (Internal quotation marks

[9] The defendant also relies on *Hansen* v. *Ohio Casualty Ins. Co.*, 239 Conn. 537, 687 A.2d 1262 (1996), which involved analogous facts and in which we employed similar reasoning to that employed in *Ceci*. Because the cases are so analogous, our discussion of *Ceci* applies equally to *Hansen*.

omitted.) Id., 173. Applying that principle, we concluded that a layperson reasonably would understand the term family member to include family members of the corporation's sole shareholder, the plaintiff's brother. Id., 172–73. Unlike *Ceci*, the interpretation advocated by the defendant in the present case is not objectively reasonable, even from the perspective of a layperson. Put simply, the defendant asks that we conclude that a layperson would have the objectively reasonable expectation that an insurer would provide an additional $1 million per incident limit of liability for free, and that a policy that repeatedly and clearly states that in order for an individual to be an insured under the policy, that individual must be listed as a named insured on the declarations page provides coverage to persons who are not so listed on the declarations page. These expectations stand in strong contrast to those that we held to be objectively reasonable under *Ceci*. As we previously have stated in this opinion, the overall standard we apply in determining whether a policy is ambiguous is whether it is reasonably susceptible to more than one reading. In contrast to the reading advocated by the plaintiff in *Ceci* of the subject policy, the reading advocated by the defendant in the present case is not a reasonable one.

The judgment is affirmed.

In this opinion the other justices concurred.