******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STEVEN L. VERA ET AL. *v.* LIBERTY MUTUAL FIRE INSURANCE COMPANY
### (SC 20178)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

The plaintiffs, whose home was insured by the defendant insurance company, sought to recover damages from the defendant in an action brought in state court and subsequently removed to the United District Court for the District of Connecticut. The plaintiffs alleged, inter alia, that the defendant had breached certain provisions of the applicable homeowners insurance policy by declining coverage for cracking in their concrete basement walls. A structural engineer whom the plaintiffs retained to evaluate the walls concluded that they were not in imminent danger of falling down and required no structural supports but would continue to deteriorate further due to being constructed with defective concrete. The plaintiffs claimed that they were covered under the policy because the deterioration of the concrete in their basement walls had substantially impaired their structural integrity such that they were in a state of collapse, as that term had been defined in *Beach* v. *Middlesex Mutual Assurance Co.* (205 Conn. 246), in which this court concluded that that the term "collapse" in a homeowners insurance policy, when otherwise undefined, is sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of an insured's home. The defendant filed a motion for summary judgment, claiming, inter alia, that the plaintiffs could not establish a substantial impairment of the structural integrity of their basement walls without proof that the walls were in imminent danger of falling down or caving in. Prior to deciding the defendant's motion, the District Court certified a question of law to this court concerning what constitutes substantial impairment of structural integrity for purposes of applying the collapse provisions in the homeowners insurance policy at issue. *Held* that the issue raised in this case was substantially identical to that considered in the companion case of *Karas* v. *Liberty Ins. Corp.* (335 Conn. 62), and the court concluded, consistent with its decision in *Karas*, that, to satisfy the substantial impairment of structural integrity standard, an insured whose home has not actually collapsed must present evidence demonstrating that the home nevertheless is in imminent danger of falling down or caving in, that is, in imminent danger of an actual collapse.

Argued December 18, 2018—officially released, November 12, 2019*

*Procedural History*

Action to recover damages for, inter alia, breach of an insurance contract, and for other relief, brought to the Superior Court in the judicial district of Tolland, where the case was removed to the United States District Court for the District of Connecticut; thereafter, the court, *Chatigny, J.*, certified a question of law to this court concerning the application of Connecticut insurance law.

*Brian D. Danforth*, for the appellants (plaintiffs).

*Robert A. Kole*, with whom was *Kieran W. Leary*, for the appellee (defendant).

*Opinion*

PALMER, J. This case, which comes to us on certification from the United States District Court for the District of Connecticut; see General Statutes § 51-199b (d),[1] is a companion case to *Karas* v. *Liberty Ins. Corp.*, 335 Conn. 62, A.3d (2019), and requires us to clarify, as we have in *Karas*, the meaning of the term "collapse" in a homeowners insurance policy when that term is not otherwise defined in the policy. More specifically, we must decide whether our holding in *Beach* v. *Middlesex Mutual Assurance Co.*, 205 Conn. 246, 252, 532 A.2d 1297 (1987), that the term "collapse," when not defined in such a policy, is "sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity" of the insureds' home, also requires a showing that the building is in imminent danger of falling down or caving in. We conclude that it does.

The plaintiffs, Steven L. Vera and Kim E. Vera, have resided in their home in the town of Willington since 2008. That home, which was built in 1993, is insured under a homeowners insurance policy issued to the plaintiffs by the defendant, Liberty Mutual Fire Insurance Company. In August, 2015, after learning about the problem of crumbling basement walls affecting homes in their community due to the use of defective concrete manufactured by the J.J. Mottes Concrete Company (Mottes), in the construction of those walls,[2] the plaintiffs retained William F. Neal, a structural engineer, to evaluate the condition of their basement walls. Although Neal observed "very narrow spider web cracking" approximately one-sixteenth of an inch wide in the interior basement walls and "three small vertical cracks" of a similar size in the exterior walls, there were no visible signs of bowing. Neal concluded that the walls were not in imminent danger of falling down and required no structural supports of any kind at that time. In his report, Neal stated that, "[b]ased solely on [his] visual observations, the most likely cause of the spider web cracking is the onset of Alkali-Silica-Reaction (ASR). ASR is a chemical reaction between alkali aggregate and silica in the concrete mix. It typically causes this type of distress to be visible [fifteen] to [twenty] years after the foundation is poured. It is very likely the ASR will continue to deteriorate the concrete, and the basement walls will begin to bulge inward until they structurally fail. There is no way to arrest the process, and there is no way to repair the existing damage."[3] Neal recommended that the basement walls be replaced.

After receiving Neal's report, the plaintiffs filed a claim under their homeowners insurance policy. The defendant denied the claim, explaining in its denial letter that the plaintiffs' policy "does not afford coverage for . . . cracking to the foundation due to faulty, inadequate or defective materials . . . [or] settling."

Following the denial of their claim, the plaintiffs commenced an action in state court, alleging that the defendant had breached the collapse provisions[4] of their policy by denying their claim. Specifically, the plaintiffs contended that the deterioration of the concrete within the basement walls had substantially impaired the walls' structural integrity such that they were in a state of "collapse" under the definition of that term that this court adopted in *Beach*. In addition to breach of contract and breach of the covenant of good faith and fair dealing, the plaintiffs also alleged that the defendant had violated the Connecticut Unfair Insurance Practices Act, General Statutes § 38a-815 et seq., and the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.

The defendant subsequently removed the case to federal court and, in September, 2017, filed a motion for summary judgment, claiming that the plaintiffs cannot establish a substantial impairment of the structural integrity of their basement walls without proof that the walls are in imminent danger of falling down or caving in, and that the plaintiffs did not adduce such proof because the walls are not in any such danger. In support of its motion for summary judgment, the defendant underscored that Neal had been deposed in connection with the underlying litigation and testified that the plaintiffs' foundation is among the least affected Mottes foundations he has seen, that the foundation has not lost its structural integrity, and that the plaintiffs can continue to safely reside in their home for the foreseeable future. When asked in his deposition whether he could say "with any reasonable degree of engineering probability" that the walls would begin to bulge inward "within the next 100 years," Neal responded, "no," but added that he thought that it was "more probable than not" that they would need to be replaced "within that time period."

While the defendant's motion for summary judgment was pending, the defendant urged the District Court to seek this court's guidance by way of certification regarding the question of what constitutes "substantial impairment of structural integrity" for purposes of applying the "collapse" provisions of the plaintiffs' homeowners insurance policy. The District Court granted the defendant's request, concluding that guidance as to the meaning of the "substantial impairment of structural integrity" standard was warranted because, since *Beach*, no Connecticut appellate court has had occasion to clarify that standard, and "insurance coverage in Mottes concrete cases is an important issue of public policy, with many . . . pending cases and many more likely to be filed."[5] *Vera* v. *Liberty Mutual Fire Ins. Co.*, Docket No. 3:16-CV-72 (RNC), 2018 WL 3014112, *3–4 (D. Conn. June 15, 2018).

With respect to the merits of the certified question,

the defendant claims, inter alia, that the plaintiffs' home has not collapsed under any plausible interpretation of the term "collapse." The defendant contends that, if that word as used in the policy is to retain any relation to its natural and ordinary meaning, "substantial impairment of structural integrity" must mean that a building, though not yet in pieces on the ground, is in imminent danger of falling down or caving in. Certainly, the defendant argues, it "must mean more than a few 'very small,' 'hairline' cracks to a house's interior basement walls, which is how the [plaintiffs'] own expert describes the alleged damage to their house. . . . [According to the defendant] [n]o layperson would use the word 'collapse' to describe [such a] state of affairs,[6] and no court outside of Connecticut has stretched 'collapse' coverage anywhere near that far." (Emphasis omitted; footnote added and omitted.)

The plaintiffs argue against an imminence requirement, maintaining that "substantial impairment of structural integrity" should be understood to mean only that a building "is no longer structurally sound." According to the plaintiffs, the deterioration of their basement walls is no "run-of-the-mill" foundation related problem but, rather, is similar to a terminal illness or a "time bomb . . . ." (Internal quotation marks omitted.) In essence, they argue that, although their basement walls may not presently be in imminent danger of falling down, they are nevertheless "afflicted with a nonreversible condition" that someday will "result in the destruction of their home unless the concrete is replaced."

The issue raised and the merits of the underlying arguments presented by the parties are substantially identical to those considered in the companion case of *Karas* v. *Liberty Ins. Corp.*, supra, 335 Conn. 62. Our examination of the issue in *Karas* addresses the arguments of the parties in the present case. In *Karas*, we concluded "that, to meet the substantial impairment standard, an insured whose home has not actually collapsed must present evidence demonstrating that the home nevertheless is in imminent danger of such a collapse. Of course, whether this evidence satisfies the standard in any particular case necessarily will depend on the specific facts of the case and the strength and credibility of the expert testimony adduced by the insured and the insurer." Id., 91. We reach the same conclusion in the present case.

The answer to the certified question is the "substantial impairment of structural integrity" standard requires a showing that the building is in imminent danger of falling down or caving in, that is, in imminent danger of an actual collapse.

No costs shall be taxed in this court to any party.

In this opinion the other judges concurred.

* November 12, 2019, the date that this decision was released as a slip

opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 51-199b (d) provides in relevant part: "The Supreme Court may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state."

[2] It is estimated that as many as 34,000 homes may be affected by defective concrete manufactured by Mottes. See L. Foderaro & K. Hussey, "Financial Relief Eludes Connecticut Homeowners with Crumbling Foundations," N.Y. Times, November 15, 2016, p. A24. According to a report commissioned by the state of Connecticut, the stone aggregate used in Mottes concrete between 1983 and 2010 contains significant amounts of pyrrhotite, a ferrous mineral that oxidizes in the presence of water and oxygen to form expansive secondary minerals that crack and destabilize the concrete, resulting in its premature deterioration. See Department of Consumer Protection, State of Connecticut, Report on Deteriorating Concrete in Residential Foundations (Decemer 30, 2016) pp. 1, 7–9, available at http://crcog.org/wp-content/uploads/2016/12/report_on_deteriorating_concrete_in_residential_foundations.pdf (last visited November 6, 2019).

[3] It is not clear to us whether Neal's opinion with respect to the cause of the cracking in the plaintiffs' basement walls is different from the cause identified by the Department of Consumer Protection in its report on the broader problem of such cracking in homes throughout Connecticut. See footnote 2 of this opinion. For present purposes, any such difference is immaterial.

[4] Those provisions provide in relevant part: "Collapse. We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following: a. [Certain perils identified elsewhere in the policy, including fire, lightning, windstorm, hail, explosion, riot, civil commotion and volcanic eruption]; b. [h]idden decay; c. [h]idden insect or vermin damage; d. [w]eight of contents, equipment, animals or people; e. [w]eight of rain which collects on a roof; or f. [u]se of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building. Collapse does not include settling, cracking, shrinking, bulging or expansion."

[5] The District Court declined to certify two additional questions; see *Vera* v. *Liberty Mutual Fire Ins. Co.*, Docket No. 3:16-CV-72 (RNC), 2018 WL 3014112, *3 (D Conn. June 15, 2018); namely, "[i]s 'substantial impairment of structural integrity' the applicable standard for 'collapse' under the [homeowners] insurance provision at issue," and, "[u]nder Connecticut law, do the terms 'foundation' and/or 'retaining wall' in a homeowners insurance policy unambiguously include basement walls . . . [and] [i]f not . . . should extrinsic evidence as to the meaning of 'foundation' and/or 'retaining wall' be considered?" We address and answer the first of these two questions and address part of the second question, however, in *Karas* v. *Liberty Ins. Corp.*, supra, 335 Conn. 62.

[6] This court previously has observed "that provisions in insurance contracts must be construed as [laypersons] would understand [them] and not according to the interpretation of sophisticated underwriters . . . ." (Internal quotation marks omitted.) *Connecticut Medical Ins. Co.* v. *Kulikowski*, 286 Conn. 1, 16, 942 A.2d 334 (2008).